# SAMUEL & STEIN

A T T O R N E Y S  A T  L A W

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| | | |
|---|---|---|
| **DAVID STEIN**<br>dstein@samuelandstein.com | November 4, 2019 | ADMITTED IN<br>NY, NJ, PA, IL, DC |

**VIA ECF**

Hon. William J. Martini, U.S.D.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

    Re: <u>Leyva, et al. v. San Diego Corp. d/b/a Extra Supermarket., et al.</u>
       *Docket # 18-cv-16488 (WJM)(MF)*

Dear Judge Martini:

  We represent plaintiffs Jeronimo Levya, Jose Hernandez, and Miguel Levya in the above-captioned matter. We submit this letter to the Court with the consent of Jamie Clare, counsel for the defendants in this case. As we reported to the Court in September, the parties have reached a final agreement to settle this matter. The fully executed settlement agreement is attached to this letter, and the parties submit that the Court should dismiss the case because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation.

<u>Background</u>

  This is a wage-and-hour case brought under the Fair Labor Standards Act and New Jersey Wage & Hour Law. Defendants operated a supermarket located in Newark, New Jersey; plaintiffs are former employees of that supermarket, who had general duties in the store including stocking, receiving deliveries, and cleaning the store. Each plaintiff asserted claims for failure to pay overtime under federal and state law.

  Plaintiffs worked for defendants commencing in 2015 (Jeronimo Leyva), 2013 (Jose Hernandez) and 2014 (Miguel Leyva), and all ended their employment at various points in 2018. Each alleged that he worked in excess of 40 hours per week, with Mr. Jeronimo Leyva asserting that he worked about 51 hours per week, Mr. Hernandez working around 54 hours per week, and Mr. Miguel Levya working approximately either 51 or 60 hours per week, depending on the time of month.

Each alleged that rather than being paid overtime, they were paid fixed weekly salaries that did not contain an overtime component. Jeronimo Levya was paid $440 per week and later $520 per week; Jose Hernandez was paid $530 per week; Miguel Levya was paid $450 per week, $550 per week, or $600 per week at various points in their employment. Plaintiffs were paid in cash, and received no paystubs or other documentation of their pay.

Based on these facts, plaintiffs calculated their maximum possible FLSA damages as follows, if they prevailed at trial on all of their allegations: Jeronimo Leyva: approximately $6,700 in actual damages, and a like amount in liquidated damages; Jose Hernandez: approximately $10,500 in actual damages and a like amount in liquidated damages; Miguel Levya: approximately $10,500 in actual damages and a like amount in liquidated damages. In other words, the total recovery for plaintiffs could be as much as $55,400, in addition to attorneys' fees and costs.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' claims against defendants for a total of $52,500. This figure is inclusive of litigation expenses and attorneys' fees. (Each plaintiff will receive a share of this figure pro-rated based on the above estimated damage calculations, as specified in the Agreement.) While the final settlement amount is less than plaintiffs' maximum possible recovery, as experienced wage-and-hour counsel we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of their claims and the risks attendant with continuing the litigation.

Defendants agreed with plaintiffs regarding the length of their tenures at their supermarket, and the nature of their duties, as well as the fact that they were paid in cash. However, they disputed the number of hours plaintiffs worked — primarily because of a dispute about whether plaintiffs received breaks —and the manner in which plaintiffs were paid; defendants claimed that plaintiffs were paid hourly and did indeed receive overtime premiums. Moreover, defendants were in possession of some time records helpful to their claims.

Plaintiffs did not have any records of their own, either as to their pay or hours, and their original calculations were based solely on their own recollections about their work history. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of competent employment records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. Moreover, three plaintiffs were available to corroborate each others' claims. Nevertheless, plaintiffs would have had to overcome the hurdle of convincing a fact-finder that defendants' records were inaccurate. In any case, it would have been a disputed fact question, with little possibility of resolving the case short of trial.

Moreover, defendants had sold the business and thus plaintiffs faced risks relating to collectability. (Even assuming the owner of the business would qualify as an employer under the wage and hour laws, and assuming plaintiffs could have successfully amended the complaint to name the owner, said owner lived in Florida, which would pose an obstacle to collection.)

By agreeing to settle at this juncture, plaintiffs were able to gain a significant percentage of the damages they were potentially owed, without the expense of depositions, the delay of waiting for trial or the risks attendant with trial. Moreover, plaintiffs will be receiving their payments in a lump sum pursuant to the Settlement Agreement. Thus, plaintiffs decided to accept defendants' offer.

## FLSA Settlement Approval

Although the Third Circuit Court of Appeals has not addressed the issue, most district courts agree that federal Fair Labor Standards Act ("FLSA") settlements must be approved by the Court in the absence of the direct supervision of the Secretary of Labor. *See, e.g., Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982). Importantly, however, Fed. R. Civ. P. 23's requirements for class action settlements do not apply to FLSA collective action settlements. *See Espenscheid v. DirectSat USA, Inc.*, 705 F.3d 770, 771-72 (7th Cir. 2013); *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, *16 (S.D.N.Y. Aug. 23, 2010). As the Southern District of New York has observed:

> Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.

*deMunecas*, 2010 U.S. Dist. LEXIS 87644, at *17 (internal quotations and citations omitted).

Thus, judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable, and resolves a bona fide dispute. *See, e.g, Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, *18 (D.N.J. Apr. 8, 2011). When analyzing a settlement agreement, a court must be mindful of the strong public policy in favor of settlements. *See, e.g., Farris v. JC Penney Co., Inc.,* 176 F.3d 706, 711 (3d Cir. 1999)

The instant case meets those criteria. First, it was resolved based on arms' length negotiations between plaintiff and defendants, both represented by experienced wage and hour negotiators. Second, the settlement resolves *bona fide* disputes between the parties regarding the merits of the case. A dispute is "bona fide" where it involves "factual issues rather than legal issues such as the statute's coverage and applicability." *Creed v. Benco Dental Supply Co.*, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013)  As discussed *supra*, the parties disagree about the manner in which plaintiffs were compensated and the number of hours they worked.

Third, the settlement is reasonable overall. Plaintiffs estimated that their claims could have been a collective $55,400, if they had been able to fully prevail, and they are settling this case for a figure equal to 95% of that total. Even after attorneys' fees and costs, plaintiffs will be receiving 100% of their maximum actual damages, plus a portion of potential liquidated damages, for a total of 64% net recovery.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See, e.g., Howard v. Philadelphia Housing Authority, 197 F. Supp. 3d 773, 778 (E.D. Pa. 2016)(finding settlement fair because plaintiff "undoubtedly face[s] the uncertainty of defending against dispositive motions to dismiss and for summary adjudication." *citing Deitz v. Budget Renovations & Roofing, Inc.*, No. 12-0718, 2013 WL 2338496, at *7 (M.D.Pa. May 29, 2013)). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Pursuant to counsel's retainer agreements individually signed by each plaintiff, we will be reimbursed for out-of-pocket expenses of $459.99 (filing fee and service of process)[1] and will retain 1/3 of the net settlement (i.e., an additional $16,846.67) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this district, and is routinely approved by courts in this Circuit. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees in the Third Circuit." *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *9 (D.N.J. Mar. 26, 2012). Fee awards have ranged from 19 percent to 45 percent of the settlement fund. *See In re Chickie's & Pete's Wage & Hour Litigation*, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014); *see also Brumley*, 2012 WL 1019337, at *12 (collecting cases where attorneys' fees around 30 percent of settlement funds were found reasonable).

While the Settlement Agreement, consistent with plaintiffs' retainer agreements, provides for a percentage of recovery, a lodestar cross-check reflects the reasonableness of those fees. Specifically, our lodestar is $10,028.75, which results in an effective multiplier of just 1.68:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $375 | 9.50 | $3,512.50 |
| David Nieporent | Senior Associate | $325 | 20.60 | $6,516.25 |
| **TOTAL** | | | 30.10 | **$10,028.75** |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New Jersey since 1991, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in roughly 350 such cases and trying several to verdict. I have substantial experience prosecuting and settling wage and hour collective and class actions, serving as lead or co-lead counsel on numerous wage and hour cases that district courts have

---

[1] The Court can take judicial notice of the filing fee; the receipt for service of process is attached as Exhibit C.

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125, and when both attorneys worked on the same task, David Nieporent did not bill. As is our firm's practice, travel time was billed at half of our standard rates.

certified as class actions and/or collective actions. *See e.g., Gomez et al. v. TNJ Enterprises Inc., et al.,* 16-cv-4824 (SDW)(LDW)(D.N.J., Aug. 30, 2018)(FLSA collective and Rule 23 class action); *Campbell v. Steadman Parking*, 12-cv-4318 (SMG), (E.D.N.Y., Sep. 26, 2013)(same); *Lopic et al. v. Diskal, Inc.*, et al., 14-cv-2822 (RLM) (same); *O'Connor v. RCI Plumbing*, 10-cv-3477 (JG)(MDG) (E.D.N.Y., Jan. 25, 2011)(FLSA collective action); *Caesar v. Alex Figliola Contracting*, 11-cv-82 (RRM)(JO) (E.D.N.Y., May 6, 2011)(FLSA collective action); *Basurto v. Café Au Bon Gout*, 12-cv-3758 (LTS)(FM)(S.D.N.Y., Nov. 16, 2012)(FLSA collective action); *Talbert v. Garda CL Great Lakes Inc.*, 13-cv-10353 (AJT)(MKM)(E.D.MI., June 22, 2016)(FLSA collective action); *Quow v. Accurate Mechanical, Inc.*, 15-cv-9852 (KHP)(S.D.N.Y., Feb. 12, 2018)(FLSA collective and Rule 23 class action). In addition to being admitted in the District of New Jersey, the Southern and Eastern Districts of New York, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New York, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New Jersey since 2001. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New York, as well as having been admitted to practice in the Southern and Eastern Districts of New York and the Eastern District of Michigan.

Moreover, we have been approved at similar rates in this District before; see, e.g., *Gomez et al. v. TNJ Enterprises Inc., et al.,* 16-cv-4824 (SDW)(LDW)(D.N.J., Aug. 30, 2018)(approving $350/hour for David Stein and $300/hour for David Nieporent), and at slightly higher rates in New York. *See Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016)(approving $400/hour for David Stein and $325/hour for David Nieporent); *Lu v.. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018)(same); *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018)(same); *Zhu v. Salaam Bombay, Inc., at al.*, 16-CV-4091 (JPO), 2019 WL 76706 (January 2, 2019)(same). And in the Eastern District, where the rates are a bit lower, we were recently awarded fees of $375 and $325 in a wage and hour case, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018).

Finally, we will note that while the Third Circuit (unlike, e.g., the Second Circuit) has not laid down any strictures on what terms may be included in a FLSA settlement, several courts in this circuit have refused to allow confidentiality provisions in such settlements, om the grounds that such provisions frustrate the implementation of the FLSA. *Brumley* 2012 WL 1019337, at *4. For that reason, the Settlement Agreement herein does not contain such a provision. Additionally, it does not contain a general release, which some courts have similarly looked askance at; only wage and hour claims are released.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                                        Very truly yours,

                                        David Stein

Enc.

cc: Jamie Clare (via ECF)